## Pomeroy's Estate.

Argued April 17, 1940. Before SCHAFFER, C. J., MAXEY, DREW, LINN, STERN and PATTERSON, JJ.

*Ulysses S. Koons,* with him *Alan M. Hawman, Jr.,* and *Geo. B. Balmer,* for appellant.

*Randolph Stauffer,* with him *J. Wilmer Fisher,* for appellee.

OPINION BY MR. JUSTICE PATTERSON, May 6, 1940:

George S. Pomeroy died September 13, 1925, survived by his widow, Lillie C. Pomeroy, a son, George S. Pomeroy, Jr., and two daughters, Elizabeth H. Pomeroy and Ellen C. Potts. By his will testator gave his residuary estate to trustees, in trust, to pay $25,000 per year to his wife and any excess net annual income over this amount to his wife and children equally. In item V-4-C, the will provided: "In the event that at the time fixed for the distribution of the principal fund, any of my children shall be deceased leaving issue living at the time fixed for the said distribution of the principal fund, I direct that said deceased child's share shall be distributed among the issue of the said child, said issue taking per stirpes." Item V-5 provides: "I do hereby specifically authorize my children to give their shares in both the income and the principal of the trust fund herein created, including real estate, to donees specifically mentioned in their last wills and testaments duly probated, and in case of the exercise of the right herein granted, the provisions hereinbefore set out for the distribution of the shares of my children in the event of their deaths, shall be superseded, provided, however, that the donees

of the principal funds, mentioned in the said last wills and testaments of my children, shall be living at the time of the termination of this trust."

Ellen C. Potts, one of testator's two daughters, died testate April 3, 1935, prior to the time fixed for the distribution of the principal fund, leaving to survive her Allan M. Potts, her husband, and two minor children, Allan M. Potts, Jr., born September 4, 1926, and William E. Potts, born April 30, 1928. Ellen C. Potts by her will, made November 7, 1925, prior to the birth of either of the two minor sons, gave her entire individual estate to her husband, and, in the third item thereof, provided: "In accordance with paragraph V-5 of the last will and testament of my father, George S. Pomeroy . . . I do hereby designate my husband, Allan M. Potts, as the person to receive my share in both the income and principal of the trust fund created in said will."

At the adjudication of the first account of the trustees under the will of George S. Pomeroy, Berks County Trust Company, as guardian of the estates of Ellen C. Potts' minor children, claimed that under section 21 of the Wills Act (Act of June 7, 1917, P. L. 403, amended by section 1 of the Act of May 20, 1921, P. L. 937), since its wards, Allan M. Potts, Jr. and William E. Potts, were born after the making of Ellen C. Potts' will, the will is absolutely void as to them, and that they are entitled to the whole of the income from and principal of the fund over which their mother had the power of appointment, the same as though the power had never been exercised. The surviving husband, Allan M. Potts, claimed income under the appointment, contending that section 21 of the Wills Act has no effect whatever upon Ellen C. Potts' appointment of her interest in her deceased father's estate, or, at most, that thereunder the birth of children after the date of a will exercising a general power of appointment invalidates such exercise only pro tanto, as in case of the deceased parent's individual estate.

The auditing judge agreed with the position taken by the guardian, Berks County Trust Company, and refused to award any part of the income to Allan M. Potts.

It is provided in section 21 of the Wills Act, as amended, that "When any person, male or female, shall make a last will and testament, and afterward . . . shall have a child or children, either by birth or adoption, not provided for in such will, and shall die leaving . . . such child or children . . ., every such person, so far as shall regard the . . . child or children born or adopted after the making of the will, shall be deemed and construed to die intestate; and such . . . child or children shall be entitled to such purparts, shares, and dividends of the estate, real and personal, of the deceased, as if such person had actually died without any will."

In *Shoch's Estate*, 271 Pa. 158, testator divided part of his residuary estate into three portions, for the benefit of his three children during their respective lives, and conferred upon each a general testamentary power of appointment over his or her particular portion. He further provided that in default of appointment by a child of its share same should go to testator's "grandchildren" living at the death of such child per stirpes. A son, James R. Shoch, died January 7, 1918, leaving a will dated October 30, 1913, by which he gave his entire estate to his wife. A child, James R. Shoch, Jr., who survived his father, was born January 9, 1917, subsequent to the date of the will. It was there held that under section 21 of the Wills Act, as previously construed in *Shestack's Estate*, 267 Pa. 115 and *Young's Appeal*, 39 Pa. 115, "it is plain that, as to James R. Shoch, Jr., the minor child born after the making of his father's will, the will of the latter was annulled, and, with respect to such after-born child, the father died intestate."

Applying section 21, as thus construed, to the facts of that case, this Court said: "So far as the individual

estate of the minor's deceased father is concerned, of course the child takes only the proportion thereof which belongs to him under the intestate law, as provided in the above quoted section of the Wills Act; but, with relation to the property of the grandfather, Henry R. Shoch, over which James R. Shoch had power of appointment, when we determine that the latter died intestate as to his son, we must then look at the will of Henry R. Shoch to see what he provides in case of such an intestacy, in order to determine the present interest of the minor child . . . When we look at the will of Henry R. Shoch, deceased, we find it provides that, in case his son, James R. Shoch shall die intestate, the fund in question shall go to the latter's children; and, as James R. Shoch did die intestate so far as James R. Shoch, Jr., is concerned, since the latter is the only child surviving his father, it follows that this grandchild takes the entire fund, under the terms of his grandfather's will."

Appellant contends that Shoch's Estate (No. 1) is not determinative of the present controversy for the reason that here there was an explicit exercise of the testamentary power of appointment, by the donee thereof, whereas in the Shoch case the power was not so exercised, but only impliedly so by virtue of section 3 of the Act of June 4, 1879, P. L. 88 (reënacted in section 11 of the Wills Act of June 7, 1917, P. L. 403). He takes the position that the Shoch case decides merely that the presumption, created by the Act of 1879, of exercise of a general power of appointment, is overcome by a counter presumption arising under section 21 of the Wills Act that the donee of the power did not intend to exercise the power, i. e., that the case rests solely upon the conclusion, thus arrived at, that there was in fact no exercise of the power of appointment. It is argued that since in the present case there is the fact of actual exercise of the power of appointment, the presumption of non-exercise must "bow before the fact."

Appellant relies for his position, as to the real basis of the Shoch case, upon the following statement therefrom, at page 164: "In the case at bar, one act of assembly, that of June 4, 1879, P. L. 88, created a presumption of intention on the part of James R. Shoch to execute the power given him by the will of Henry R. Shoch; while, under our statutory doctrine of implied revocation, arising from an after-born and unprovided-for-child, a counter conclusive presumption arises that James R. Shoch did not intend to exercise the power so far as concerns the after-born child, James R. Shoch, Jr. Therefore, the power has never been exercised, for the Act of 1879 has not changed the last-mentioned statutory doctrine in the least; consequently, the appellee takes under the will of his grandfather."

In answer to this contention it is only necessary to point out that the "counter presumption," referred to in Shoch's Estate (No. 1), is not a presumption that there has been no exercise of the power, but a presumption that a decedent whose will, in fact or law, would otherwise operate as an exercise thereof, intends that the exercise of the power shall be regarded as a nullity so far as after-born and unprovided-for children are concerned. Manifestly, this presumption is not overcome by a showing that the power was exercised by a will made before the birth of a child any more than a decedent's presumed intention to die intestate as respects his individual estate, so far as after-born children are concerned, can be overcome by showing a will, disposing of same without making provision therein for such children, executed prior to their birth. These "presumptions" are not presumptions of fact, which is the sense in which appellant uses the term; they are legislatively created presumptions of law which are irrebuttable: *Young's Appeal,* supra, 118; *Baum's Estate,* 269 Pa. 63, 66.

Decree affirmed, appellant to pay the costs.